| Minute Order Form (06/97) | United States District Court, Northern District of Illinois | | |
|---|---|---|---|
| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge If Other than Assigned Judge | |
| CASE NUMBER | 02 C 3771 | DATE | 9/15/2003 |
| CASE TITLE | Zurita vs. City of Chicago, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motions to dismiss [13-1] and [30-1] are granted. Case dismissed with prejudice. Case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 4 number of notices | **Document Number** |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | SEP 17 2003 date docketed | 37 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 9/15/2003 date mailed notice | |
| MD | courtroom deputy's initials | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

**DOCKETED**

**SEP 1 7 2003**

RUDOLPH ZURITA,

    Plaintiff,

v.

CITY OF CHICAGO et al.

    Defendants.

No. 02 C 3771

Judge Joan H. Lefkow

## MEMORANDUM OPINION AND ORDER

Plaintiff Rudolph Zurita ("Zurtia") has filed a two-count amended complaint for false imprisonment under 42 U.S.C. § 1983 against defendants Michael Sheahan ("Sheahan"), the Sheriff of Cook County, in his official capacity, and the Sheriff of Cook County police officers Leibas, Muhammad and Ryan (collectively, the "Cook County officers"), in their individual capacities.[1] Under Count I, Zurita alleges that the Cook County officers unlawfully detained him for four days in the Cook County jail without probable cause and failed to investigate and verify his identity after he repeatedly told them that he "was not the person named in the arrest warrant." (Am. Compl. ¶ 24.) Further, Zurita alleges that the "information on the face of the warrant" demonstrated this misidentification. (*Id.*) Alternatively, Zurita alleges under Count II that the Cook County officers unlawfully detained him based on an invalid arrest warrant because "it neither truly named the individual to be arrested nor did it describe the individual to be

---

[1] Zurita also filed his lawsuit against the City of Chicago and certain City of Chicago police officers. On or about March 24, 2003, this court dismissed Zurita's lawsuit against these defendants with prejudice pursuant to an agreed order of dismissal.

3⁷

arrested sufficiently enough to identity him[.]" (*Id.* ¶ 29.) With respect to both Counts, Zurita alleges that Sheahan is liable for his failure to train, discipline and punish the Cook County officers for their actions. Before this court are defendants' separate motions to dismiss Zurita's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Jurisdiction is properly invoked pursuant to 28 U.S.C. §§ 1331 and 1334(a). For the reasons set forth below, the court grants both motions.

## STANDARDS FOR A MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002). Nevertheless, the court is not required to "ignore any facts set forth in the complaint that undermine the plaintiff's claim [nor does it] assign any weight to unsupported conclusions of law." *LeBlang Motors, Ltd. v. Subaru of Am., Inc.*, 148 F.3d 680, 690 (7th Cir. 1998) (internal citations and quotations omitted).

## ALLEGATIONS FROM THE AMENDED COMPLAINT

During the evening of Wednesday, October 11, 2000, two Chicago police officers stopped and detained Zurita and a friend for trespassing on unidentified property located on the

2

south side of Chicago. Subsequently, the officers transported them to the 10th District Police Station (the "Station").

While at the Station, Zurita and his friend gave the police their full names, addresses and social security numbers. The police also fingerprinted and photographed them. After he and his friend had been held at the Station for seven hours, the police charged them with criminal trespass. The police released Zurita's friend but transferred Zurita to a holding cell. There, the police informed Zurita that they believed his name was an alias and that his real name was "Sergio Landeros" ("Landeros"). The police further informed Zurita that Landeros had an outstanding arrest warrant stemming from a charge for domestic battery in 1999 and that the police would continue to detain Zurita on that basis. Zurita protested repeatedly that the officers had the wrong man but the police responded, "That's your name now," or other words to that effect. (Am. Compl. ¶ 12.) Thereafter, Zurita remained in the holding cell and repeatedly yelled out that he was not Landeros but the police ignored him.

After remaining in the holding cell for approximately one hour, another police officer "processed" Zurita by questioning him about, among other things, his age, date of birth, height and weight. (*Id.* ¶ 14.) Again, Zurita explained that he was not Landeros but he was ignored. On Thursday, October 12, the police brought Zurita to state criminal court. At the appearance for the criminal trespass charge, Zurita attempted to explain to the Assistant Public Defender that he was not Landeros. The Assistant Public Defender, however, advised Zurita that his best strategy was to plead guilty to the criminal trespass charge before he "worried about the issue of his misidentification." (*Id.* ¶ 15.) Zurita pled guilty to the criminal trespass charge and then was transferred to another courtroom, where the court "executed" the warrant for Landeros' arrest.

3

(*Id.* ¶ 16.) The unnamed judge in the second courtroom ordered Zurita confined to the Cook County jail. (Pl. Response to the Individual Def.'s Mot. to Dismiss the Amended Compl., 9.)

Because Zurita could not make bail on the domestic battery charge, he went to the Cook County Jail at 26th Street and California Avenue. There, Zurita underwent the intake procedures by the Cook County officers. Zurita was strip-searched, photographed and issued prison clothing. Throughout the intake procedures and subsequent confinement, Zurita repeatedly informed the Cook County officers that he was not Landeros. (Am. Compl. ¶ 17.)

On or about Monday, October 16, 2000, Zurita appeared before a judge regarding the domestic battery charge. Again, Zurita attempted to explain that he was not Landeros but the Assistant Public Defender (whom Zurita does not identify as the same counsel from October 12) ignored him. The Assistant Public Defender recommended to Zurita that he accept a plea bargain in which he would receive either a 60-day sentence or a "reinstatement" of a domestic abuse counseling program to which Landeros had been previously assigned. (*Id.* ¶ 19.) Thereafter, Zurita pled guilty and accepted the reinstatement. (*Id.*)

On his release, Zurita learned that his employer terminated him from his security guard position due to his detention. On November 2, 2000, as required by the guilty plea on behalf of Landeros, Zurita met with Tom Donners ("Donners"), a domestic violence counselor. At that meeting, Zurita explained to Donners that he was not Landeros. Donners decided to review Landeros' computerized file. According to the file, Landeros was listed as 5'7" tall, 130 lbs., and born in 1966 whereas Zurita was 6'2" tall, 245 lbs., and born in 1955. Donners immediately realized that Landeros and Zurita were different people. On Donners' initiative, the judge was

informed of the misidentification. On February 27, 2001, Zurita was "cleared of all charges" entered against him as Landeros. (*Id.* ¶ 22.)

On or about May 28, 2002, Zurita filed the instant lawsuit. On or about October 9, 2002, Zurita filed an amended complaint, which defendants have moved to dismiss.

## DISCUSSION

Section 1983 imposes liability on any person who "subjects, or causes to be subjected," another to a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Thus, to state a claim against defendants under section 1983, Zurita must allege facts sufficient to show that (1) he was deprived of a constitutional right and that (2) the defendants caused this deprivation. Zurita is not specific about which of his constitutional right defendants allegedly violated. However, even if Zurita properly alleges a deprivation of his constitutional rights, he does not allege facts sufficient to show that the defendants caused this deprivation.

Zurita argues that Sheahan and the Cook County officers were the "moving force" behind the alleged deprivation of his constitutional rights because of Sheahan's failure to implement a meaningful policy and practice to verify the identity of those detained within the Cook County Jail. Defendants argue that they cannot be held liable for the alleged deprivation because defendants held Zurita in the Cook County jail pursuant to a court order.

Zurita relies heavily on *Griffin v. Sheahan*, No. 98-C-2398, 1999 WL 417342 (N.D. Ill. June 16, 1999), to support his contention that the judge's order to hold Zurita does not "immunize" defendants from liability. The issue in *Griffin* was whether the defendants, the Cook County Sheriff and the Director of the Cook County Jail, could be held liable for wrongfully

detaining the plaintiff *after* the plaintiff appeared before a judge who ordered the detention. The *Griffin* defendants relied on *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987), to support their contention that they were not liable for the two days of alleged mistaken detention after the plaintiff appeared before a judge because they were acting pursuant to the judge's order. The Seventh Circuit stated in *Patton* that "jailing a person for a period of time over his vigorous protest that he is the wrong person, *without investigating him or bringing him before a magistrate*, raises serious constitutional questions." 822 F.2d at 700 (emphasis added). The defendants argued that *Patton*'s language is disjunctive: jailers may either conduct a minimal investigation to verify the detainee's identity, or may bring the detainee before a magistrate or judge–and if they do the latter, they may escape any liability for failing to do the former. *Griffin*, 1999 WL 417342, at *2.

The court rejected this argument by reading *Patton* alongside *Johnson v. City of Chicago*, 711 F. Supp. 1465 (N.D. Ill. 1989). In *Johnson*, the plaintiff was held for only twenty-four hours before he was taken before a judge, but the judge did not discover the mistaken identity and the custodian continued to hold the detainee for six days *after* the first appearance, without investigating the plaintiff's claims of mistaken identity. *Id.* at 1467. As the *Griffin* court interpreted *Johnson*, the district court "denied a motion to dismiss on the ground that the plaintiff had adequately alleged a failure to investigate and a prolonged detention, including for a period *after* the plaintiff had been brought before a judge." *Griffin*, 1999 WL 417342, at *3. The *Griffin* court reasoned that "*Patton* and *Johnson* can only be reconciled by reading the statement [from *Patton*] 'investigation . . . or bringing . . . before a magistrate' as a statement which means that the custodian has a continuing duty to investigate if the proceedings before a judge do not

6

specifically address and resolve the issue of mistaken identity." *Id.* Thus, the *Griffin* court held that the defendants could be held liable for wrongfully detaining the plaintiff despite the fact that defendants were acting pursuant to a court order.

This court disagrees with the *Griffin* court's reading of *Johnson*. In *Johnson*, as in the instant case, the plaintiff filed suit against both the City of Chicago, whose police officers executed the arrest, and the Cook County Sheriff, who detained the plaintiff in the Cook County jail pursuant to a court order. 711 F. Supp. at 1466-67. The analysis on which the *Griffin* court relied applied only to the plaintiff's claims against the City. The *Johnson* court held that the plaintiff's appearance before the judge was not a sufficient intervening cause to absolve the City from liability for the entire period of detention. *Id.* at 1473. Thus, the court held that "the chain of causation between the City's mistaken identification of [the plaintiff] and his subsequent detention remained intact" despite the judge's order. *Id.* However, the court granted the Sheriff's motion to dismiss. The court stated that the defendant

> was merely following a valid court order to detain [the plaintiff] . . . Although the mistake as to [the plaintiff's] identity might have been easily discovered by the sheriff's agents, it is clear that [the sheriff] cannot be held liable. . . . A mere custodian is not required to evaluate the sufficiency of court orders under the threat of civil rights actions.

*Id.* at 1474 (citing *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir. 1986)). This outcome is supported by the Seventh Circuit's decision in *Arensman v. Brown*, 430 F.2d 190, 194 (7th Cir. 1970). There the court stated,

> The failure of a jailor or keeper to release a prisoner held on a warrant or commitment cannot be the basis for a civil rights action regardless of allegations or malice, motive or intent. His act is required by law . . . so long as he acted under authority of the writ or warrant, he was performing a duty which the law *at that time* required him to perform.

7

*Id.*(emphasis in original)(quoting *Hoffman v. Halden*, 268 F.2d 280, 300 (9th Cir. 1959).

Sheahan and Cook County officers detained Zurita pursuant to a court order. Defendants were acting pursuant to state law by accepting custody of Zurita and not releasing him until a court order was issued. 730 ILCS 125/4 states, "The warden of the jail shall receive and confine in such a jail, until discharged by due course of law, all persons committed to such jail by any competent authority." The language of this statute is mandatory. Thus, the Sheriff is a "mere custodian," and, as such, he is "not required to evaluate the sufficiency of court orders under the threat of civil rights actions." *Johnson*, 711 F. Supp. at 1474.

Zurita's appeals to *Luck v. Rovenstine*, 168 F.3d 323, 326 (7th Cir. 1999), and *Armstrong v. Squadrito*, 152 F.3d 564, 578-79 (7th Cir. 1989), do not help him. In *Luck*, the plaintiff was detained for eight days on the basis of a warrantless arrest *without* being brought before a judge or magistrate for a probable cause hearing. *Luck*, 168 F.3d at 325. In *Armstrong*, the plaintiff was arrested on a valid warrant, but was then detained for fifty-seven days *without* appearing before a judge. *Armstrong*, 152 F.3d at 567-68. Zurita appeared before a judge–twice–on the very day that he was arrested. Neither time did Zurita protest that he was not Sergio Landeros, and he even pled guilty to trespassing charges under that name. A judge then ordered the defendants in this case to hold Zurita in the County Jail until he posted bond. The defendants did so, releasing Zurita four days later. These facts are not sufficient to state a claim against defendants for the deprivation of Zurita's constitutional rights.

**ORDER**

For the reasons stated above, the court grants defendants' motions to dismiss [#13] [#30]. This case is dismissed with prejudice. Case is terminated.

ENTER: *Joan H. Lefkow*
JOAN HUMPHREY LEFKOW
Dated: September 15, 2003 United States District Judge